**Fill in this information to identify the case:**

Debtor name   **Property Holders, LTD**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF IOWA

Case number (if known)   **22-00744**

☑ Check if this is an amended filing

---

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11, Subchapter V

 **Property Holders, LTD's** Modified Plan of Reorganization, Dated  April 10, 2023 

**Background for Cases Filed Under Subchapter V**

**A. Description and History of the Debtor's Business**

See Exhibit **A – History of Property Holders, LTD**

**B. Liquidation Analysis**

A liquidation analysis is attached to the Plan as  Exhibit **B.** This Liquidation Analysis shows that all claims of all creditors of the debtor corporation would be paid in a Chapter 7 bankruptcy.

**C. Ability to make future plan payments and operate without further reorganization**

When this case was filed, Debtor owned a number of residential real properties and one empty residential lot, which are listed in Schedule A, having a total value of  $5,725,000.33. All of those properties are mortgaged to either GreenState Credit Union or Dupaco Community Credit Union, except the empty residential lot having a value of $90,000. In addition, a property located at 2040 Spoon Creek CT SE, Cedar Rapids, IA valued at $625,000.00 is mortgaged to Dupaco Community Credit Union. The pre-petition secured claim of GreenState Credit Union is $829,669.48 according to its claim filed as Claim 8, and the principal amount of the claim is accruing interest at 4.5% per year, plus any allowed post-petition fees, costs and professional fees permitted by the original contracts between it and the Debtor, and this claim is secured by real property valued at $1,730,000.00. The pre-petition claim of Dupaco Community Credit Union is $2,081,476.11, and this claim is secured by property valued at $4,580,000.00. Linn County has outstanding real estate taxes secured by real property owned by the estate of $114,987.65, some of which must be redeemed from tax sales.Two priority claims totaling $21,830.00 have been filed. From the schedules and filed claims, Debtor predicts that unsecured non-priority claims totaling $109,386.25 will need to be dealt with in the claims process and represent at the time of filing this Plan the potential liability of the estate for unsecured non-priority claims. All filed claims and other claims Debtor believes are still outstanding total approximately $3,150,000.00.

The total value of property available to satisfy the claims of creditors is $6,350,000, and the potentially total allowed claims that will be $3,150,000, plus interest and other costs accrued by holders of secured claims under their original contracts with Debtor or under Iowa law in the case of real property tax claims since the filing of the case and closing costs for the sales of real property contemplated by the Plan, all of which Debtor generously estimates at an additional 10% of the total filed and anticipated claims, or $313,650, Therefore the total liabilities of the estate which may need to be satisfied under this Plan is $3,450,000, rounded up to the nearest $1,000. Satisfaction of these claims from property of the estate and other property securing the claims of secured creditors will leave a net property to the Debtor worth $3,213,000, rounding down to the nearest $1,000.00.

Pursuant to the terms of the Plan, Debtor commits to liquidation of the number of residential properties owned by the estate necessary to satisfy in full all allowed claims. Debtor does not rely on any amount of tenant rental revenue from the rental of properties owned by the estate to pay any portion of the allowed claims. If it turns out that a portion of the secured claim of Dupaco Community Credit Union can return to normal servicing under the original contracts between the parties should Debtor's revenue stream from rental of properties mortgaged to Dupaco and/or properties retained by the Debtor after satisfaction of the secured claim of GreenState Credit Union, then Debtor, with the agreement of Dupaco, will return to normal servicing of those mortgage debt obligations. The current status of the properties mortgaged to the holders of Class 2 and Class 3 claims are shown in the spreadsheets titled **GreenState Credit Union Loans – Judgments – Sales To Date** labeled **Exhibit C-1,** and **Dupaco Community Credit Union Loans – Sales To Date** labeled **Exhibit D-1.** The projected sales and payments to Class 2 and Class 3 claimholders are shown in the spreadsheets titled **GreenState Credit Union Loans & Judgments – Projected Sales and Payments** labeled **Exhibit C-2** and **Dupaco Community Credit Union Loans – Projected Sales and Payments** labeled **Exhibit D-2.**

The Debtor's financial projections show that the Debtor will have net proceeds from the sale of real property and projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $ 3,500,000.00.

The final Plan payment is expected to be paid on or before the date falling three years after the final order confirming this plan is entered.

**Article 1: Summary**

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of **Property Holders, LTD** (the *Debtor*) primarily from the sale of assets as described above in Paragraph C.

This Plan provides for:   **1** classes of priority claims;

**2** classes of secured claims;

| Debtor | **Property Holders, LTD** | Case number (*if known*) **22-00744** |
|---|---|---|
| | Name | |

**1** classes of non-priority unsecured claims; and

**1** classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **100** cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

**2.01** **Class 1** .......... All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8))

I. Mari Davis has filed a claim (Claim No. 7) for claimed wages, salary or commissions earned within 180 days before the filing of the filing of the Petition claiming priority under 11 U.S.C. §507(a)(4). This claim is disputed.

II. Amanda Clark has filed a claim (Claim No.10)  for return of a residential real estate rental deposit in the amount of $950.00 and other damages claiming priority under 11 U.S.C. 507(a)(7) for all elements of her claim. This claim is disputed. Relief from the automatic stay has been provided to allow Ms. Clark and the estate to have a trial in the Iowa District Court, Small Claims Division, Case No. SCSC259469 for the determination of the findings of fact and conclusions of law regarding this claim, the results of which will be returned to the bankruptcy court for further proceedings.

**2.02** **Class 2** The claim of GreenState Credit Union to the extent allowed as a secured claim under 11 U.S.C. §506.

This claim is believed to be fully secured.

**2.03** **Class 3** .......... The claim of Dupaco Community Credit Union to the extent allowed as a secured claim under 11 U.S.C. §506.

This claim is believed to be fully secured

**2.04** **Class 4** All non-priority unsecured claims allowed under 11 U.S.C. §502.

**2.05** **Class 5** .......... Equity interests of the Debtor.

The Debtor has only one equity security holder: Charles A. Davisson who owns 100% of the common stock issued by the corporation.

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

**3.01** **Unclassified claims** Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

**3.02** **Administrative expense claims** Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

**3.03** **Priority tax claims** Each holder of a priority tax claim will be paid in cash in a lump sum following the liquidation of real estate and payments from the proceeds of liquidated real estate properties to the secured creditors specified in the treatment of Class 2 and Class 3 claims. The payment to members of this class shall be made from the remaining proceeds from the sale of real estate and payment to those secured creditors from the proceeds of liquidated real estate and contemporaneously with the first monthly payment to the Class 3 claimant, Dupaco Community Credit Union, or within thirty days of the final payment to GreenState Credit Union should that occur after the final payment to the Class 2 claimant from the proceeds of real property sales, whichever comes later.

Linn County, Iowa has a secured priority claim for delinquent real property taxes of $114,987.65  at filing. This claim will be satisfied outside the plan by payments made from the proceeds of the sales of real property proposed by this plan by the respective escrow  agents or from cash collateral funds by agreement with the relevant Class 2 or Class 3 creditor if they have not already been paid by the time this plan comes before the court for confirmation..

**3.04** **Statutory fees** All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date of the plan.

| Debtor | Property Holders, LTD | | Case number (*if known*) 22-00744 |
|---|---|---|---|
| | Name | | |

**Article 4: Treatment of Claims and Interests Under the Plan**

4.01   **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☑ Impaired<br>☐ Unimpaired | Each holder of an allowed priority claim who accepts this plan will be paid in cash in a lump sum following the liquidation of real estate and payments from the proceeds of liquidated real estate properties to the secured creditors specified in the treatment of Class 2 and Class 3 claims. The payment to members of this class shall be made from the remaining proceeds from the sale of real estate and payment to those secured creditors from the proceeds of liquidated real estate and contemporaneously with the first monthly payment to the Class 3 claimant, Dupaco Community Credit Union, or within thirty days of the final payment to GreenState Credit Union should that occur after the final payment to the Class 2 claimant from the proceeds of real property sales, whichever comes later. Each holder of a Class 1 claim who accepts the plan will be paid interest in the allowed amount of their claim at the rate of 5% per annum beginning on the effective date of the plan until paid.<br><br>Each holder of a Class 1 claim who rejects the plan will be paid will be paid the amount found due to them on the effective date of the plan or within 10 days following entry of a final order allowing the claim, individually or as part of the Debtor's Report on Claims, whichever comes later. |
| Class 2 – **Secured claim of GreenState Credit Union** | ☑ Impaired<br>☐ Unimpaired | The allowed secured claim of GreenState Credit Union (GSCU) shall be paid as follows:<br><br>1. Debtor shall continue to sell properties mortgaged to GSCU and make payments as follows until the secured claim, including any allowed post-petition costs, fees and approved compensation of professional persons employed by the Debtor, is paid in full:<br><br>2. Following the closing of a sale after all closing costs, including prorated and delinquent property taxes, are paid, the escrow agent in the sale shall be instructed to pay all or a part of the net proceeds to GSCU for application on the mortgage and judgment liens applicable to that property according to the Iowa District Court, Linn County modified foreclosure decree/*in personam judgment* applicable to the mortgage loan transaction applicable to that property as follows:<br><br>    1) If the property being sold in a particular transaction is the sole property subject to the mortgage lien, the balance due on that mortgage transaction as set out in the state court decree/judgment shall be calculated and paid in full with interest figured to the date on which payment is tendered to GSCU, with any remaining amount of the proceeds being treated as cash collateral under Article 10.1 – Preservation and Use of Cash Collateral Funds;<br><br>    2) If the property being sold in a particular transaction is one of two or more properties subject to that mortgage lien at the time of closing of the sale, the balance due on that mortgage transaction as set out in the state court decree/judgment shall be calculated as of the date on which tender of payment will be made to GSCU. If the full calculated balance due is: a) more than the net proceeds from the sale, the full amount of the proceeds shall be paid to GSCU for application on that balance, or b) less than the net proceeds from the sale, a sufficient amount of the net proceeds shall be paid to GSCU to pay the full balance due and the remaining proceeds be dealt with as otherwise provided in this plan in Article 10.1 – Preservation and Use of Cash Collateral Funds;<br><br>3. Following the sale of a property and distribution of proceeds under Paragraph 2. 2) and when a balance remains due on the affected mortgage transaction according to the applicable decree/judgment after accounting for the payment made from that sale transaction, GSCU shall apply the payment to the remaining principal due thereunder as it has done in sales closed prior to confirmation of this Plan. Debtor shall submit an accounting of the transaction to GSCU beginning with the balance due prior to the current transaction and showing the calculation and application of interest due under the decree/judgment on the beginning principal balance and the application of the payment first to principal, then to accrued interest and the other costs and fees prescribed by the said decree/judgment and, finally, showing the remaining amount due under that decree/judgment, if any.<br><br>4. Upon receipt of payment for any sale, GSCU shall issue the normal release of the mortgage and judgment liens for the property subject to the mortgage and judgment. If the sale proceeds received pursuant to Paragraph 2 above pay the entire balance of and thus satisfy the judgment affecting the property, any remaining properties subject to the particular mortgage foreclosed under that decree/judgment shall also be released as set forth above, except to the extent necessary to secure GSCU's right to receive payment of its judgment(s) in excess of the satisfaction of the mortgage(s) and any post-petition amounts allowed under Article 5.04 – Post Petition Interest, fees, costs and professional fees found to be payable to Greenstate to be added to the claim remain unpaid. Once the final sale is made by Debtor, GreenState's cash collateral account must have a balance sufficient to pay those post-petition amounts allowed by the bankruptcy court.<br><br>5. Should Debtor determine that sale proceeds allocated for deposit into GSCU's cash collateral account become a larger amount than Debtor requires for use under Article 10.1 – Preservation and Use of Cash Collateral Funds, Debtor may make payment to GSCU on its remaining secured claim and such payments shall apply to the one or more of the remaining mortgage/judgment liens as agreed by the parties. If the parties cannot agree on the mortgage/judgment lien to which the additional funds shall be applied, the parties shall alternate choosing such mortgage/judgment lien, with the debtor having first choice, GSCU having the second choice and so on. Debtor shall provide an accounting of any such application of cash collateral funds as described in Paragraph 3. |

| Debtor | Property Holders, LTD | Case number (if known) | 22-00744 |
|---|---|---|---|
| | Name | | |

6. Upon the full amount of GSCU's allowed secured claim being paid in full, including any allowed post-petition amounts, GreenState Credit Union shall release any remaining mortgage liens on properties owned by Debtor and shall satisfy on the record any judgments not previously satisfied by receipts of the proceeds of the various sales provided for in this Plan.

7. If the parties cannot agree upon an accounting required by this treatment or any other aspect of the administration of the treatment of this claim, the parties shall make a joint motion to the court setting out the particulars of the disagreement and requesting resolution of the disagreement by the court. Such a motion will be handled as a contested matter and will require service only on the U.S. trustee and the case trustee and any other parties requesting notice.

8. Unless modified by the provisions of this plan or limited in application by the Bankruptcy Code or Federal Rules of Bankruptcy Procedure, the parties shall continue to be governed by the terms and conditions of the modified foreclosure decrees and *in personam* judgments entered in the various civil actions filed by GreenState against the debtor.

9. Debtor owns a vacant lot located at 2936 Bever AVE SE, Cedar Rapids, Iowa which is not subject to any lender's mortgage lien and is subject only to the *in personam* judgment liens of GreenState Credit Union. If Debtor desires to obtain additional funds to finance its reorganization effort and would need to give a mortgage lien on that property to obtain such financing, the mortgage lien he would give to a lender will be superior in priority to GreenState's judgment liens.

| | |
|---|---|
| **Class 3 – Secured claim of Dupaco Community Credit Union** | ☑ Impaired <br> ☐ Unimpaired |

The allowed secured claim of Dupaco Community Credit Union shall be paid as follows:

1. Debtor shall sell properties mortgaged to Dupaco sufficient to pay the closing costs of the properties sold, fully satisfy the mortgage debts due on those sold, pay all delinquent real property taxes due on all properties subject to Dupaco's mortgage liens, and bring all payments up to date on all remaining obligations to the first day of the month following the closing of the latest sale;

2. Following the closing of a sale after all closing costs, including prorated and delinquent property taxes, are paid, the escrow agent in the sale shall be instructed to pay all or a part of the net proceeds to Dupaco for application on the mortgage obligation applicable to that property as follows:

   1) If the property being sold in a particular transaction is the sole property subject to the mortgage lien, the balance due on that mortgage transaction shall be calculated and paid in full with interest figured to the date on which payment is tendered to Dupaco, with any remaining amount of the proceeds being treated as cash collateral under Article 10.1 – Preservation and Use of Cash Collateral Funds;

   2) If the property is being sold in a particular transaction is one of two or more properties subject to that mortgage lien at the time of closing of the sale, the balance due on that mortgage transaction shall be paid to Dupaco: If the full balance due is: a) more than the net proceeds from the sale, the full amount of the proceeds shall be paid to Dupaco for application on that balance, or b) less than the net proceeds from the sale, a sufficient amount of the net proceeds shall be paid to Dupaco to pay the full balance due and the remaining proceeds be dealt with as otherwise provided in this plan in Article 10.1 – Preservation and Use of Cash Collateral Funds;

3. In order to ensure the Debtor will have the ability to service such debt, Debtor will continue to liquidate the real properties securing the Secured Claim until such time as each of the following has been substantiated: (a) the total, unpaid amount of the secured claim has been reduced to less than $950,000.00; (b) the loan to value ratio in respect of the balance owed in respect of the secured claim and the appraised value of the remaining properties securing the Secured Claim, expressed as a percentage, is not more than 55% (based upon appraisals obtained within 12 months of the date such loan to value ratio is determined); and (c) the Debtor has demonstrated that its monthly income from rent or other sources provides a debt service coverage ratio in respect of the remaining secured claim is not less than 1.25 to 1.0.

4. If by the time the last sale contemplated in Paragraph 1 has closed Debtor has developed a cash flow from rental of real properties mortgaged to Dupaco and/or properties retained by the Debtor after satisfaction of the secured claim of GreenState Credit Union or other business operations of Debtor in compliance with the provisions of Paragraph 3, then Debtor, with the agreement of Dupaco, will return to normal servicing of those mortgage debt obligations. Should Debtor return to normal servicing of its remaining obligations to Dupaco, those payments will be treated as payments outside the plan and will continue until the remaining debt is paid in full according to the original contracts between the parties.

5. If Debtor and Dupaco cannot come to agreement to return to normal servicing of the remaining obligations as contemplated in Paragraph 2 and/or that the requirements of Paragraph 3 have been satisfied, Debtor may file a motion with the court for the determination of the feasibility of returning to normal servicing of the remaining mortgage obligations owed to Dupaco with the net rental and other income available to Debtor for the servicing of those obligations under the original contracts between the parties. If either Debtor does not file such a motion or the parties agree that returning to normal servicing of the remaining obligations is not feasible, then Debtor will return to selling the real properties owned by the estate under Paragraphs 1 and 2 until Dupaco's allowed secured claim is fully satisfied.

8. Unless modified by the provisions of this plan or limited in application by the Bankruptcy Code or Federal Rules of Bankruptcy Procedure, the parties shall continue to be governed by the terms and conditions of the original contracts between the parties, which include all promissory notes, mortgages or other agreements between the parties related to this claim.

| | |
|---|---|
| **Class 3 – Non-priority** | ☑ Impaired |

Each holder of an allowed Class 3 claim will be paid in cash in a lump sum following the liquidation of

| Debtor | **Property Holders, LTD** | Case number (if known) | **22-00744** |
|---|---|---|---|
| | Name | | |

| unsecured creditors | ☐ Unimpaired | real estate and payments from the proceeds of liquidated real estate properties to the secured creditors specified in the treatment of Class 2 and Class 3 claims and the specified payments have been made to the unclassified administrative claims, the priority tax claims and Class 1 claims. The payment to members of this class shall be made from the remaining proceeds from the sale of real estate and after payment to those secured creditors from the proceeds of liquidated real estate and contemporaneously with the first monthly payment of regular debt service to the Class 3 claimant, Dupaco Community Credit Union, or within thirty days of the final payment to GreenState Credit Union should that occur after the final payment to the Class 2 claimant from the proceeds of real property sales, whichever comes later. |
|---|---|---|
| Class 4 - **Equity security holders of the Debtor** | ☑ Impaired<br>☐ Unimpaired | Charles A. Davisson, the sole equity security holder of the debtor corporation shall retain his stock and shall retain all his rights of ownership upon all payments having been made as provided in this plan. |

## Article 5: Allowance and Disallowance of Claims

| 5.01 | **Disputed Claim** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
|---|---|---|
| 5.02 | **Delay of Distribution on a Disputed Claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Upon completion of the liquidation of real estate as provided in this plan, Debtor shall maintain sufficient funds on hand to pay the allowed amount of such claims according to the schedule for payment of claims to the class of the affected claim according to the payment schedule specified for the class of any such claimholder or within 15 days following the final determination of the claim as set out in this part. |
| 5.03 | **Settlement of Disputed Claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |
| 5.04 | **Post Petition Interest, Fees, Costs and Professional Fees for Holders of Class 2 and Class 3 Claims.** | Any claims by Class 2 or Class 3 claimants for post-petition interest, fees, costs or professional fees that are recoverable under the original agreements between the Debtor and such a claimant which were not directly paid from the sale proceeds of real property on which such creditor has a mortgage lien shall be claimed by filing an amended claim within thirty (30) days after the entry of the order confirming this Plan. Any such interest, fees, costs or professional fees claimed must be itemized, and the invoices for any costs be made available to Debtor's counsel on request by email. The claims of any such claimant for post-petition attorney or other professional fees must be accompanied by an itemized statement of the individual time charges of any professional or para-professional for whom compensation is claimed and any other costs or charges claimed. Each such claim for compensation of professionals shall specify the hourly rate for any accountant, attorney or para-professional for whom compensation is claimed.

So long as the estate exists post-confirmation, any post-confirmation fees or costs owed to professionals, including fees of the Subchapter V Trustee and any professionals working for the reorganized debtor shall be subject to approval by the Court pursuant to 11 U.S.C. § 503(b). Upon Court approval of any such post-confirmation administrative expenses, the Debtors will pay such approved administrative expense in the ordinary course of business, unless otherwise agreed to by the particular claimant. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes, and if applicable assigns, all executory contracts and unexpired leases as of the effective date of the plan. |
|---|---|---|
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of order confirming this Plan has been entered. |

## Article 7: Means for Implementation of the Plan

| Debtor | **Property Holders, LTD** | Case number (*if known*) **22-00744** |
|---|---|---|
| | Name | |

As contemplated by the treatments specified for the various classes of claimholders, the primary means for implementation of the provisions of this Plan will be obtained through the sales of residential real estate owned by Debtor and subject to the mortgage liens of the two secured creditors. Sufficient parcels of real property, chosen at the discretion of Debtor, shall be sold to pay all the amounts specified in the treatment of the individual classes of claimants to be paid from the liquidation of real estate.

Any payments to the holders of allowed claims which are specified to be paid from Debtor's rental income stream are, as noted, provisional upon development of sufficient cash flow from rental income to sustain those payments over the remaining life of the obligations being serviced.

All rental proceeds realized from property of the estate during the life of the plan will be reported in the required quarterly operating reports provided to the trustee.

## Article 8: General Provision

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
|---|---|---|
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| | | If the Plan is confirmed under 11 U.S.C. § 1191(a), the Debtor will file a Notice of Substantial Consummation not later than 14 days after the Plan is substantially consummated per 11 U.S.C. § 1183(c)(2). |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Iowa govern this Plan and any agreements, documents, and instruments executed in connection with this Plan or any original agreements, decrees or judgments accepted by this Plan, except as otherwise provided in this Plan. |
| [8.07 | **Corporate Governance** | Debtor is a corporation organized under the laws of the State of Iowa. The Debtor corporation has issued only one class of equity securities, and that class is common stock which has all the voting rights of equity security holders, and 100% of that stock is held by Charles L. Davisson, who also is the President of the corporation. So long as this plan is in effect, Debtor shall issue no classes of equity securities which possess a non-voting status. |
| | | During the life of this Plan, Mr. Davisson shall continue as President and chief executive officer of the debtor corporation. |
| [8.08 | **Retention of Jurisdiction** | The Court shall retain jurisdiction in this case until the final payment to members of all classes of payments from the proceeds of the sale of real estate as specified in this Plan. |

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;

or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10: Other Provisions

| Debtor | **Property Holders, LTD** | Case number (*if known*) **22-00744** |
|---|---|---|
| | Name | |

| 10.1 | **Plan Payments Made by Debtor** | Pursuant to 11 USC § 1190(2), if the plan is confirmed under 11 USC § 1191(b), all of the future proceeds from the sale of assets of the Debtor will be paid by the Debtor. The Debtor shall submit quarterly reports to the Subchapter V Trustee reporting all proceeds received from sales, all income collected, and all proceeds distributed under the plan. The Debtor asserts that the value of the property to be distributed under the plan in the 3-year period or such longer period not to exceed 5 years is not less than the projected disposable income of the Debtor under Section 1191(c)(2). |
|---|---|---|
| 10.2 | **Preservation and Use of Cash Collateral Funds** | Upon confirmation of this Plan, Debtor shall: 1) continue to deposit the net proceeds from the sale of real property and revenue from tenant rental payments into the cash collateral account at Dupaco Community Credit Union which has been designated to hold the cash collateral for the secured creditor having a mortgage lien on the property which generates the sale proceeds or rental payments; 2) shall have the right to use cash collateral for operation of the Debtor's business in the ordinary course of business, including the preparation of properties for sale and the compensation professionals employed by Debtor which are approved by the court. The cash collateral used for the preparation of properties for sale shall come from the cash collateral account designated for the secured creditor which has a mortgage lien on the particular property being prepared for sale. |
| | | Debtor may make such uses of cash collateral funds in its discretion so long as the remaining amount of the balance due under the secured claim shall equal not more than Fifty-Five per cent (55%) of the total of value of property secured under that particular secured claim and the balance of cash collateral remaining in its respective account. |
| | | This provision shall continue to operate until: 1) the secured claim of GreenState Credit Union is paid in full, and 2) the secured claim of Dupaco Community Credit Union is paid down according to the treatment of that claim to the point at which Debtor is able to resume regular monthly payments pursuant to the original agreements between the parties, or, if regular debt service is not resumed, when its secured claim is paid in full. Once this provision ceases to operate regarding a particular secured claimant, the cash collateral account allocated to that creditor may be closed and the remaining funds in that account deposited into the general business deposit account of the Debtor In Possession and be used for the operation of the business according to the provisions of the U.S. Bankruptcy Code and Federal Rules of Bankruptcy Procedure until all payments under the plan have been made. |

Respectfully submitted,

/s/ Charles A. Davisson
_____
[Signature of the Debtor's President]

Charles A. Davisson
_____
[Printed name]

_____
[Signature of the Attorney for the Debtor]

**Rush M. Shortley 7353**
_____
[Printed name]

<u>**Exhibit A**</u>

### History of Property Holders, Ltd

Property Holders Ltd was incorporated on Apil 9, 1990 by Charles L. Davisson as a small company devoted to acquiring vacant residential properties built in the early 1920's primarily on the southeast side of Cedar Rapids, Iowa that needed repair and upgrading to modern standards. Mr. Davisson's vision was to restore the properties to better than their original condition and modernizing them to meet modern codes and styles. After refurbishment, most of the properties were retained as rental properties, and others were sold as single-family residences.

Mr. Davisson operated the business by himself, doing almost all the work single-handedly. He operated the business until 2009, when he began to experience some health issues. Mr. Davisson's son Charles A. (Chuck) Davisson then returned to Cedar Rapids and took over the business from his father.

From the time he took over the business, Chuck expanded it to maintain an steady inventory of approximately fifty houses. Over the years, he would buy houses that came on the market and refurbish and upgrade them to current standards. He sold one or two houses each year retaining the rest as rental units. Total property values grew to roughly $7,000,000 with a very low loan-to-value ratio of 47%.

The business was successful and posted profits through 2021, with 2019 and 2020 being the most successful in company history. Since then, the company has experienced several financial setbacks.

In December of 2019, the company was 34 days late on the mortgage payments due November 1st to Greenstate Credit Union caused by an unforeseen delay in closing the sale of one of the properties. All mortgage payments to Greenstate were timely before this. As a result, Greenstate elected to exercise the acceleration clauses in all the mortgages it held on properties owned by Property Holders, LTD, and demanded payment of the total balances due totaling approximately $800,000 within 15 days by December 30, 2019.

The COVID-19 pandemic struck early in 2020, and the federal and state governments placed a moratorium on all residential evictions for non-payment of rent. This lasted more than 18 months. As a result, most of the company's tenants stopped paying rent altogether knowing they could not be evicted. At the end of the moratorium, most tenants, having paid no rent for up to a year and a half, moved out leaving most of the company's rental properties vacant. Thereafter, the ongoing foreclosure actions and the public notices of foreclosure sales, also posted on the properties, made re-renting the properties and keeping them rented problematic.

During the pandemic period,  multiple applications were made to the federal rental assistance program nothing was received to compensate for lost rent. The only assistance received was a single PPP loan payment of $3,100 .

On August 10, 2020, an historic derecho storm hit Cedar Rapids. Almost every Property Holders property suffered significant damage, compounding the financial stress on the company's finances.

In spite of these financial reverses, the record profits of 2019 and 2020 enabled the company to make most payments through July 2022—Dupaco Community Credit Union received all its payments from January 2020 through July 2022. Greenstate Credit Union refused to accept any payments for the first six months of 2020. Thereafter through July 2022, the company paid amounts sufficient to bring its loans current. Once the payments of July 2022 were made to both secured creditors, the company's cash reserves were exhausted. Even though payments had been brought current, Greenstate declined to engage in negotiations to workout the company's obligations and drop the foreclosure actions initiated in January 2020.

From July 2022 to the filing of this case in November, Property Holders, LTD unsuccessfully pursued refinancing of the Greenstate mortgage debts, while making several overatures to negotiate a workout with Greenstate. A week prior to the foreclosure sales scheduled for November 22, 2022, Mr. Davisson realized the credit union was not going to entertain a workout and he retained bankruptcy counsel on behalf of the company. This case was filed as an emergency "short filing" on November 22, 2022.

## Exhibit B

# Chapter 11 – Subchapter V Plan Liquidation Analysis

| Sched. | Description | Value | Liq. Costs | Exemption | Secured Claims | Avail. For Admin. Prior & Unsec. Cl. |
|---|---|---|---|---|---|---|
| | **Real Estate** | | | | | |
| A | As scheduled | 5,725,000 | 572,500 | - | 3,136,314 | 2,016,186 |
| | **Personal Property (1)** | | | | | |
| B-3 | Cash & Accts | 45 | - | | - | 45 |
| B-41 | Office Equipment, Computers, Etc | 250 | 25 | | | 225 |
| B-74 | Claims against others | 16,940 | 6,000 | | | 10,940 |
| | | | | | - | - |
| | **Totals** | 5,742,235 | 578,525 | - | 3,136,314 | 2,027,396 |

**Amount Available for Admin. Priority and Unsecured Claims**          2,027,396

**Less, Chapter 7 Trustee Fees**
$0 to $5,000 -- 25%          1,250
>$5,000 <$50,000 -- 10%          4,500
>$50,000 < $1,000,000 -- 5%          47,500
>$1,000,000 -- 3%          30,822

**Total Chapter 7 Trustee Fees**          84,072

**Net Available for Priority & Unsec. Claims**          1,943,324

Less, Priority Claims (Itemize)          -
                    Wage Claims          -
**Total Priority Claims**          -

**Net Available for Unsecured Claims in Ch 7**          1,943,324

Notes:

(1)   If assets are not scheduled in a section of Sch. B, it is omitted from the liquidation analysis.

**Property Holders, LTD**

**Chapter 11 Plan
Exhibit B**

**<u>Exhibit C</u>**

## GreenState Credit Union Loans – Judgments – Sales To Date (4/10/2023)

| Case No. | Loan Acct No. | Location | Original Loan Balances | Foreclosure Decree/Judgments as of 3/01/2021 | Property Values | Property Status | Sale Price | Closing Costs & RE Taxes | PD to GSCU | Net to CC Acct | Remaining Property Value |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EQCV094983 | 50003 | 528 15th St SE | $ 117,600 | $ 110,136.96 | $ 95,000 | | $ - | | | | 95,000.00 |
| | | 1714 6th Ave | | | 135,000 | | - | | | | 135,000.00 |
| EQCV094985 | 50004 | 1719 Bever Ave SE | 90,750 | 85,344.95 | 125,000 | | - | | | | 125,000.00 |
| EQCV095004 | 50005 | 1933 Higley AV SE | 69,000 | 67,717.13 | 125,000 | | - | | | | 125,000.00 |
| EQCV095003 | 50006 | 2208 Mt. Vernon Rd SE | 86,400 | 81,986.75 | 135,000 | Sold-Closed | 135,000 | 17,157.49 | 84,997.84 | 32,844.67 | - |
| EQCV095008 | 50007 | 838 15th St SE | 55,000 | 51,409.09 | 90,000 | | - | | | | 90,000.00 |
| EQCV095015 | 50009 | 825 18th St SE | 370,000 | 337,452.12 | 90,000 | | - | | | | 90,000.00 |
| | | 1158 28th St SE | | | 135,000 | Sold-Closed | 135,000 | 17,304.20 | 117,695.80 | - | - |
| | | 1713 7th Ave SE | | | 130,000 | | - | | | | 130,000.00 |
| | | 1751 Higley Ave SE | | | 110,000 | Sold-Closed | 109,900 | 11,408.86 | 98,491.14 | | - |
| | | 1818 7th Ave SE | | | 145,000 | | - | | | | 145,000.00 |
| | | 1841 Washington Ave SE | | | 135,000 | | - | | | | 135,000.00 |
| EQCV095024 | 50010 | 1548 7th AVE SE | 62,400 | 59,683.80 | 125,000 | Sold-Closed | 125,000 | 13,417.75 | 64,149.91 | 47,640.32 | - |
| EQCV095025 | 50011 | 1557 6th Ave SE | 73,600 | 70,853.38 | 120,000 | Listed | - | | | | 120,000.00 |
| | TOTALS | | $ 924,750.00 | $ 864,584.18 | $ 1,695,000.00 | | $ 504,900.00 | $ 59,288.30 | $ 365,334.69 | $ 80,484.99 | $ 1,190,000.00 |

| | | | | |
|---|---|---|---|---|
| **Initial Decree Totals** | $ 864,584.18 | | **Remaining Property Value** | $ 1,190,000.00 |
| **Total Payments to GSCU** | 365,334.69 | | **Remaining Due on Decrees** | 499,249.49 |
| **Remaining Decree Totals** | $ 499,249.49 | ,plus accruing interest | **Net Equity Value** | $ 690,750.51 |
| | | | **Debt to Collateral Ratio** | 42% |

## GreenState Credit Union Loans & Judgments – Projected Sales and Payments

| Case No. | Loan Acct No. | Location | Original Loan Balances | Foreclosure Decree/Judgments as of 3/01/2021 | Property Values | Projected or Actual Listing Date | Property Status | Sale Price | Closing Costs & RE Taxes | PD to GSCU | Net to CC Acct | Remaining Property Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EQCV094983 | 50003 | 528 15th St SE | $ 117,600 | $ 110,136.96 | $ 95,000 | | To Be Held | $ - | | | | 95,000.00 |
| | | 1714 6th Ave | | | 135,000 | | To Be Held | - | | | | 135,000.00 |
| EQCV094985 | 50004 | 1719 Bever Ave SE | 90,750 | 85,344.95 | 145,000 | 7/21/2023 | To List | 145,000 | 19,611.00 | $87,598.05 | $37,790.95 | - |
| EQCV095004 | 50005 | 1933 Higley AV SE | 69,000 | 67,717.13 | 130,000 | 6/22/2023 | To List | 130,000 | 15,018.63 | 69,883.94 | 45,097.43 | - |
| EQCV095003 | 50006 | 2208 Mt. Vernon Rd SE | 86,400 | 81,986.75 | 135,000 | 11/4/2022 | Sold-Closed | 135,000 | 17,157.49 | 84,997.84 | 32,844.67 | - |
| EQCV095008 | 50007 | 838 15th St SE | 55,000 | 51,409.09 | 90,000 | | To Be Held | - | | | | 90,000.00 |
| EQCV095015 | 50009 | 825 18th St SE | 370,000 | 337,452.12 | 90,000 | 8/1/2023 | To List | 90,000 | 16,620.41 | 58,316.79 | 15,062.80 | - |
| | | 1158 28th St SE | | | 135,000 | 10/8/2022 | Sold-Closed | 135,000 | 17,304.20 | 117,695.80 | - | - |
| | | 1713 7th Ave SE | | | 140,000 | 4/25/2023 | To List | 140,000 | 14,826.86 | 125,173.14 | - | - |
| | | 1751 Higley Ave SE | | | 110,000 | 10/1/2022 | Sold-Closed | 109,900 | 11,408.86 | 98,491.14 | - | - |
| | | 1818 7th Ave SE | | | 145,000 | | To Be Held | - | | | | 145,000.00 |
| | | 1841 Washington Ave SE | | | 135,000 | 5/16/2023 | To List | 135,000 | 14,420.00 | 120,580.00 | - | - |
| EQCV095024 | 50010 | 1548 7th AVE SE | 62,400 | 59,683.80 | 125,000 | 11/3/2022 | Sold-Closed | 125,000 | 13,417.75 | 64,149.91 | 47,640.32 | - |
| EQCV095025 | 50011 | 1557 6th Ave SE | 73,600 | 70,853.38 | 120,000 | 1/31/2023 | Listed | 120,000 | 12,026.87 | 72,270.54 | 35,702.59 | - |
| | TOTALS | | $ 924,750.00 | $ 864,584.18 | $ 1,730,000.00 | | | $ 1,264,900.00 | $ 151,812.07 | $ 899,157.15 | $ 214,138.76 | $ 465,000.00 |

| | | | |
|---|---|---|---|
| Initial Decree Totals | $ 864,584.18 | Remaining Property Value | $ 465,000.00 |
| Total Payments to GSCU | 899,157.15 ,Including post-petition interest | Remaining Due on Decrees | (34,572.97) |
| Remaining Decree Totals | $ (34,572.97) | Net Equity Value | $ 499,572.97 |

Debt to Collateral Ratio    -7%

Notes: 1. All figures, except those representing closed sales, are projected estimates made from currently available information. . The
terms of the plan treatment will be the final determinate of the properties that will be sold.

2. Debtor is informed that the average number of days between listing a residential property for sale in Cedar Rapids, Iowa and sale
is 82 days.  The projected interest payment is based on an estimate of 90 days between listing of a property and the closed sale.

3. For properties to be sold,  interest is figured on the principal amount due according to the applicable foreclosure decree from
March 1, 2021 using the daily interest accrual  amount stated in the decree. For the single-property mortgage liens on properties
that have been sold, the amount paid to the credit union is the actual payoff amount provided by the credit union to the closing

4. The negative figures for the  amount due on the foreclosure decrees represents the total accrued interest to be paid at the time of the sales.

**<u>Exhibit D</u>**

# Dupaco Community Credit Union Loans – Status To Date (4/10/2023)

| Loan Acct No. | Location | Original Loan Balances on Notes | Dupaco Claim | | | Property Values | Property Status | Sale Price | Closing Costs & RE Taxes | Paid to Dupaco | Net to CC Acct | Remaining Property Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Principal Balances | Interest Due | Balance Due | | | | | | | |
| 4569 | 1060 33rd St NE | $ 94,500.00 | $ 82,492.93 | $ 1,337.06 | $ 83,829.99 | $ 160,000 | Listed | $ 185,000 | | | | - |
| 8214 | 2040 Spoon Creek Ct SE | 320,000.00 | 309,851.71 | 6,643.77 | 316,495.48 | 675,000 | Unsold | - | | | | 675,000.00 |
| | 2009 Memorial Dr SE | | | | | 325,000 | Unsold | - | | | | 325,000.00 |
| 4170 | 1720 Grande Ave SE | 250,000.00 | 34,296.76 | 315.16 | 34,611.92 | 140,000 | Unsold | - | | | | 140,000.00 |
| 4212 | 1748 C Ave NE | 72,375.00 | 67,256.20 | 872.97 | 68,129.17 | 150,000 | Unsold | - | | | | 150,000.00 |
| 4659 | 357 17th St SE | 36,347.94 | 33,465.11 | 295.30 | 33,760.41 | 115,000 | Unsold | - | | | | 115,000.00 |
| 4683 | 351  20th ST SE | 68,284.16 | 64,056.79 | 1,272.33 | 65,329.12 | 155,000 | Unsold | - | | | | 155,000.00 |
| 4691 | 1025 20th AVE | 292,906.83 | 274,917.48 | 5,461.03 | 280,378.51 | 125,000 | Unsold | - | | | | 125,000.00 |
| | 2532 1st Ave NE | | | | | 160,000 | Unsold | - | | | | 160,000.00 |
| | 1047 27th St NE | | | | | 65,000 | Unsold | - | | | | 65,000.00 |
| | 1801 Bever Ave SE | | | | | 150,000 | Unsold | - | | | | 150,000.00 |
| 4717 | 2307 BeverAve SE | 110,254.42 | 103,490.39 | 2,055.82 | 105,546.21 | 295,000 | Unsold | - | | | | 295,000.00 |
| 4709 | 130 Thompson Dr SE, #324 | 66,561.25 | 62,440.66 | 1,240.24 | 63,680.90 | 175,000 | Unsold | - | | | | 175,000.00 |
| 4725 | 3224 Indiandale Cir SE | 131,486.25 | 123,470.19 | 2,453.14 | 125,923.33 | 365,000 | Unsold | - | | | | 365,000.00 |
| 4741 | 2045 Park Ave SE | 63,415.22 | 59,494.71 | 1,181.78 | 60,676.49 | 145,000 | Unsold | - | | | | 145,000.00 |
| 4766 | 2842 14th Ave SE | 67,929.52 | 63,763.94 | 1,266.78 | 65,030.72 | 140,000 | Unsold | - | | | | 140,000.00 |
| 4782 | 1734 5th Ave SE | 60,818.22 | 57,110.91 | 762.41 | 57,873.32 | 145,000 | Unsold | - | | | | 145,000.00 |
| 4832 | 2916 Iowa Ave SE | 65,319.62 | 61,338.62 | 1,218.68 | 62,557.30 | 140,000 | Unsold | - | | | | 140,000.00 |
| 4899 | 2164 Blake Blvd SE | 113,641.47 | 106,795.24 | 2,122.37 | 108,917.61 | 235,000 | Unsold | - | | | | 235,000.00 |
| 4923 | 412 26th St SE | 75,606.90 | 71,107.21 | 1,413.54 | 72,520.75 | 145,000 | Unsold | - | | | | 145,000.00 |
| 4949 | 2021 Grande Ave SE | 273,696.35 | 247,564.10 | 5,121.19 | 252,685.29 | 170,000 | Unsold | - | | | | 170,000.00 |
| | 2103 Bever Ave SE | | | | | 182,000 | Unsold | - | | | | 182,000.00 |
| | 1610 Park Ave SE | | | | | 155,000 | Unsold | - | | | | 155,000.00 |
| | 1052 32nd St NE | | | | | 50,000 | Unsold | - | | | | 50,000.00 |
| VISA 3451 | N/A | | 10,237.59 | | 10,237.59 | | | | | | | |
| **TOTALS** | | **2,163,143.15** | | | $ **1,868,184.11** | $ **4,562,000.00** | | $ **185,000.00** | $ - | $ - | $ - | $ **4,402,000.00** |

| | | |
|---|---|---|
| Total Claims | $ 1,868,184.11 | |
| Total Paid To Date | - | |
| | $ 1,868,184.11 | |

| | |
|---|---|
| Remaining Property Value | $ 4,402,000.00 |
| Balance Due on Loans | 1,868,184.11 |
| Net Equity Value | $ 2,533,815.89 |
| | |
| Debt to Collateral Ratio | 42% |

## Dupaco Community Credit Union Loans – Projected Sales and Payments

| Loan Acct No. | Location | Original Loan Balances on Notes | Dupaco Claim Principal Balances | Dupaco Claim Interest Due | Dupaco Claim Balance Due | Property Values | Projected or Actual Listing Date | Property Status | Sale Price | Closing Costs & RE Taxes | Interest Paid | Principal Paid | Net to CC Acct | Remaining Property Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4569 | 1060 33rd St NE | $ 94,500.00 | $ 82,492.93 | $ 1,337.06 | $ 83,829.99 | $ 180,000 | 4/8/2023 | Listed | $ 185,000 | $ 18,874.00 | $ 2,661.33 | $ 82,492.93 | $ 80,971.74 | - |
| 8214 | 2040 Spoon Creek Ct SE | 320,000.00 | 309,851.71 | 6,643.77 | 316,495.48 | 675,000 | | To be Held | - | | | | | 675,000.00 |
| | 2009 Memorial Dr SE | | | | | 325,000 | | To be Held | | | | | | 325,000.00 |
| 4170 | 1720 Grande Ave SE | 250,000.00 | 34,296.76 | 315.16 | 34,611.92 | 140,000 | | To be Held | - | | | | | 140,000.00 |
| 4212 | 1748 C Ave NE | 72,375.00 | 67,256.20 | 872.97 | 68,129.17 | 150,000 | | To be Held | - | | | | | 150,000.00 |
| 4659 | 357 17th St SE | 36,347.94 | 33,465.11 | 295.30 | 33,760.41 | 120,000 | 4/17/2023 | To List | 120,000 | 12,116.00 | 1,816.52 | 33,465.11 | 72,601.89 | - |
| 4683 | 351 20th St SE | 68,284.16 | 64,056.79 | 1,272.33 | 65,329.12 | 155,000 | | To be Held | - | | | | | 155,000.00 |
| 4691 | 1025 20th AVE | 292,906.83 | 274,917.48 | 5,461.03 | 280,378.51 | 125,000 | | To be Held | | | | | | 125,000.00 |
| | 2532 1st Ave NE | | | | | 160,000 | 6/1/2023 | To List | 160,000 | 17,964.50 | 20,287.34 | 121,748.16 | - | - |
| | 1047 27th St NE | | | | | 165,000 | 9/1/2023 | To List | 165,000 | 23,358.76 | 1,377.73 | 140,263.51 | - | - |
| | 1801 Bever Ave SE | | | | | 55,000 | | To be Held | | | | | | 55,000.00 |
| 4717 | 2307 BeverAve SE | 110,254.42 | 103,490.39 | 2,055.82 | 105,546.21 | 295,000 | 9/15/2023 | To List | 295,000 | 35,998.47 | 8,516.73 | 103,490.39 | 146,994.41 | - |
| 4709 | 130 Thompson Dr SE, #324 | 66,561.25 | 62,440.66 | 1,240.24 | 63,680.90 | 175,000 | | To be Held | - | | | | | 175,000.00 |
| 4725 | 3224 Indiandale Cir SE | 131,486.25 | 123,470.19 | 2,453.14 | 125,923.33 | 365,000 | | To be Held | - | | | | | 365,000.00 |
| 4741 | 2045 Park Ave SE | 63,415.22 | 59,494.71 | 1,181.78 | 60,676.49 | 145,000 | | To be Held | - | | | | | 145,000.00 |
| 4766 | 2842 14th Ave SE | 67,929.52 | 63,763.94 | 1,266.78 | 65,030.72 | 140,000 | | To be Held | - | | | | | 140,000.00 |
| 4782 | 1734 5th Ave SE | 60,818.22 | 57,110.91 | 762.41 | 57,873.32 | 145,000 | | To be Held | - | | | | | 145,000.00 |
| 4832 | 2916 Iowa Ave SE | 65,319.62 | 61,338.62 | 1,218.68 | 62,557.30 | 140,000 | 7/1/2023 | To List | 140,000 | 18,167.00 | 4,526.66 | 61,338.62 | 55,967.72 | - |
| 4899 | 2164 Blake Blvd SE | 113,641.47 | 106,795.24 | 2,122.37 | 108,917.61 | 235,000 | | To be Held | - | | | | | 235,000.00 |
| 4923 | 412 26th St SE | 75,606.90 | 71,107.21 | 1,413.54 | 72,520.75 | 145,000 | 8/1/2023 | To List | 145,000 | 20,715.78 | 4,435.60 | 71,107.21 | 48,741.41 | - |
| 4949 | 2021 Grande Ave SE | 273,696.35 | 247,564.10 | 5,121.19 | 252,685.29 | 170,000 | | To be Held | - | | | | | 170,000.00 |
| | 2103 Bever Ave SE | | | | | 182,000 | 8/15/2023 | To List | 182,000 | 23,948.51 | 15,021.31 | 143,030.18 | - | - |
| | 1610 Park Ave SE | | | | | 155,000 | | To be Held | - | | | | | 155,000.00 |
| | 1052 32nd St NE | | | | | 55,000 | | To be Held | - | | | | | 55,000.00 |
| VISA 3451 | N/A | | 10,237.59 | | 10,237.59 | | | | | | | | | |
| **TOTALS** | | **2,163,143.15** | **$ 1,822,912.95** | | **$ 1,868,184.11** | **$ 4,597,000.00** | | | **$ 1,392,000.00** | **$ 171,143.02** | **$58,643.22** | **$ 756,936.11** | **$ 405,277.17** | **$ 3,210,000.00** |

| | | | |
|---|---|---|---|
| Beg. Principal Balance | $ 1,822,912.95 | Remaining Property Value | $ 3,210,000.00 |
| Total Principal Paid | 756,936.11 | Balance Due on Loans after Sales | 950,000.00 |
| Principal Balance after Sales | $ 1,065,976.84 | Net Equity Value | $ 2,260,000.00 |
| Cash Collateral Applied | 115,976.84 | | |
| Final Principal Balance | $ 950,000.00 | Debt to Collateral Ratio | 30% |

Notes:   1. All projected figures are estimates made from currently available information. The terms of the plan treatment will be the final determinate of the properties that will be sold.

2. Debtor is informed that the average number of days between listing a residential property for sale in Cedar Rapids, Iowa and sale is 82 days. The projected interest payment is based on an estimate of 90 days between listing of a property and the closed sale.

3. For properties to be sold, interest is figured on the principal amount due according to the figures provided by DPCU for each loan in its claim. At the time of sale, DPCU will provide a payoff amount to the closing agent which may be different from the estimated figures here.