# United States Bankruptcy Court
## Northern District of Iowa

| | |
|---|---|
| **IN RE:** | **Chapter 11** |
| PROPERTY HOLDERS, LTD, | **Bankruptcy No.** 22-00744 |
| **Debtor.** | **Motion for Authority to Sell Property Under 11 USC §363** |

Debtor, by Rush M. Shortley, its attorney, requests relief as follows:

1. This Chapter 11 case was filed on November 21, 2022. Debtor's Modified Chapter 11 plan is set for confirmation hearing on May 23, 2023.

2. The Debtor In Possession owns a number of parcels of real property characterized as single family residences located in the City of Cedar Rapids, Iowa.

3. A number of the properties are mortgaged to Greenstate Credit Union (GSCU), and a number of the properties are mortgaged to Dupaco Credit Union (DPCU).

4. On May 3, 2023, one of Debtor's properties was sold on a purchase agreement for a cash sale and the closing set for May 25, 2023, subject to approval of the sale by this court. This property is located at 1557 6th AVE SE, Cedar Rapids, IA and is mortgaged solely to GSCU. A copy of the completed purchase agreement is attached as Exhibit A. Documentation of the availability of buyer's funds sufficient to close the sale is being furnished GSCU's counsel under separate cover. A copy of the Preliminary Closing Statement is attached as Exhibit B. This closing statement shows all required payments out of escrow leaving net proceeds of $100,039.39 prior to payment to GSCU on its mortgage lien.

5. The total amount due on the debt secured by the relevant mortgage to GSCU is stated in the Modified Judgment Against Defendants and Entry of Foreclosure Decree entered by the Iowa District Court, Linn County in Case No. EQCV095025 as $69,533.44, plus interest accruing from March 2, 2021 at $8.82661 per day until paid. From that date to May 26, 2023, the date set for the closing of the subject sale, interest will have accrued for 816 days totaling $7,202.51, giving a total amount due of $76,735.95 to satisfy GSCU's mortgage and judgment lien upon this property.

6. After satisfaction of GSCU's mortgage and judgment liens at closing, a balance of approximately $23,312.24 would remain, subject to additional closing costs being

assessed in the final closing statement for this sale, which amount would be subject to the liens of the *in personam* judgments entered in the other state court foreclosure/civil actions brought against the debtor by GSCU as detailed in Schedule D and the Statement of Financial Affairs filed in this case and would be deposited into Debtor's cash collateral account at DPCU opened to hold funds on which GSCU would have a continuing lien pending satisfaction of its entire secured claim.

7. Pursuant to the provisions of 11 U.S.C. §363(b), the Court's approval is required for sales of estate property "… other than in the ordinary course of business…". Debtor believes this sale of property is in the ordinary course of its business by buying, leasing and selling residential real estate, but the Iowa Title Standards 13.1 requires without limitation an order of the bankruptcy court approving the sale, which necessitate's the filing of this motion to ensure the marketable title of the subject real property.

8. Since Debtor believes this sale could be lawfully completed without approval of the Court but for the requirements of the Iowa Title Standards, that the sale will not harm the interests of GSCU, that the sale will not reduce any potential benefit to unsecured creditors, and that a timely closing would be of essence to the interests of Debtor and other interested parties, Debtor believes this motion could properly be handled on an *ex parte* basis. If the Court determines that an *ex parte* order approving this sale would not be appropriate, Debtor believes the exigency of the circumstances of the sale pending one week from the filing of this motion that a telephonic hearing would appropriately be set for Tuesday, May 23, 2023, or earlier, allowing the Court to hear any objections prior to the granting of an order approving this sale and prior to the scheduled closing.

9. Counsel for GSCU has been notified that this motion is being filed, and the credit union's consent to the sale has been requested by Debtor's counsel and granted by GSCU's counsel.

10. Debtor is also aware that DPCU has retained Tonya A. Trumm of O'Connor and Thomas, PC as counsel for this case, and electronic notice of this motion and any hearing set by the Court would be provided to her, as well as the other interested parties requesting notice.

WHEREFORE, Property Holders, LTD, Debtor in Possession, requests the this Honorable Court to enter its order as follows;

1. A finding that handling this motion on an *ex parte* basis is appropriate under the circumstances presented;

2. Its order permitting the sale to proceed as specified in this motion and approving the disposition of the net proceeds to seller following closing;

3. If the Court finds an opportunity should be presented for interested parties to be heard, provide that a telephonic hearing be set for Tuesday, May 23, 2023, or such other date chosen by the Court, with electronic notice to be given to Greenstate Credit Union's counsel, the case trustee and the U.S. Trustee and all other interested parties requesting notice;

Dated: May 23, 2023

Respectfully Submitted,

Rush M. Shortley                              7353
1921 51st Street NE
Cedar Rapids, IA 52402
Phone: (319) 294-1907
E-mail: rush@shortleylaw.com
Attorney for Debtor

Consent to granting the *ex parte* relief requested by this motion by Greenstate Credit Union is granted.

Dated: May 23, 2023

   /s/ Siobhan Briley
Siobhan Briley
Pugh Hagan Prahm PLC
425 E Oakdale BLVD STE 201
Coralville, IA 52241
Phone: (319)351-2028
Email: Sbriley@pughhagan.com
Attorney for Greenstate Credit Union

EXHIBIT A




# PURCHASE/SALE CONTRACT

I/We request that (Co.) **Coldwell Banker Hedges Realty** or any of its employees, agents, or associates select, prepare, and complete the form documents as authorized by Iowa law or by the Iowa Supreme Court Rule, such as purchase agreements, groundwater hazard, and declaration of value incident to a residential real estate transaction. **The signing of this Contract creates important rights and liabilities on the part of both the Seller and the Buyer. If you have concerns regarding your rights and liabilities, you are encouraged to seek competent legal advice.**

1. Prepared by: Team Moser      Check appropriate representation: ☑ Buyer  ☐ Seller  ☐ Dual Agency
2. Date: 05/03/2023      Time: 10:00   ☐ a.m. ☑ p.m. The undersigned Buyer hereby offers
3. the following terms for the purchase of the following property: Parcel # 14223-08001-00000
4. Address: 1557 6th Ave SE      City: Cedar Rapids      Iowa. Zip code: 52403
5. Abbreviated legal description: WELLINGTON PLACE 7TH E 38' N 75' STR/LB 1 15, Linn County County, Iowa,
6. subject to public highways, covenants, easements, restrictions, and zoning, if any.
7. **PURCHASE PRICE** to be: $ 100,000      Earnest money ☑ Check or ☐ Electronic Transfer of $ 1000 to be provided
8. within three (3) business days after this purchase contract has been accepted. Said earnest money to be paid to and will be cashed, deposited,
9. and held in Trust by the Listing Broker. In the event this Contract is not acceptable to both Buyer and Seller, then said earnest money will be
10. returned to Buyer. It is understood that if earnest money is not paid by the time specified, then this contract may be voidable at the Seller's
11. option.
12. **CLOSING** shall be on (date) 05/25/2023 or sooner by mutual agreement.
13. **SELLER TO GIVE POSSESSION** ☑ at time of closing or ☑ on (date) 05/25/2023 (time) ____ ☐ a.m.☐ p.m.
14. If for any reason the closing is delayed, the Buyer and Seller may make a separate agreement with adjustments as to the date of
15. possession in the form of an amendment or interim occupancy agreement. Any unpaid balance, rents, interest, or insurance, for these
16. purposes shall be adjusted as of the date of possession and shall bear interest at the rate of _____ % per annum.
17. The balance of the purchase price shall be paid as indicated below. Select below all that apply, (A) through (E):
18. ☐ A. **NEW LOAN:** This Contract is subject to and contingent upon the Buyer obtaining a commitment in writing, including appraisal, for a
19. (type): ☐ Conv ☐ FHA ☐ VA ☐ USDA ☐ Other _____ - loan for not greater than _____ % of the purchase price with
20. an interest rate at ____ % or less with a term of _____ years. Buyer agrees to pay all customary loan costs.
21. **Within three (3) business days** after final acceptance of this Contract, Buyer to make application for such loan with (mortgage provider)
22. _____, (mortgage originator) _____ and to make a good faith
23. effort to obtain a loan commitment as stated above. If Buyer has not provided to the Seller a written commitment, including appraisal, or
24. loan denial, on or before (date) _____, this contract shall become null and void unless both parties have agreed to a timely
25. signed amendment.
26. ☐ Subject to the terms and conditions of the **attached** lender letter from above referenced mortgage provider.
27. **Buyer agrees to immediately initiate an amendment, subject to Seller's approval, to this Purchase/Sale Contract in the**
28. **event there are any changes in terms, type of financing, or mortgage provider. Failure to do so may make this contract voidable**
29. **at Seller's option.**
30. ☑ B. **CASH:** Buyer will pay the balance of the purchase price in cash at time of closing with adjustment for closing costs to be either added
31. or deducted from this amount. This Contract **is not contingent** upon Buyer obtaining financing for such funds in order to close. Buyer
32. also agrees to provide, within three (3) business days after this contract is accepted, verifiable evidence of the availability of the
33. funds needed to close on the sale, subject to Seller's approval within one (1) business day of receipt.
34. ☐ At Buyer's expense, this contract's **CASH** terms are subject to an appraisal completed on or before (date) _____.
35. **For any appraisal contingency,** if the property does not appraise at purchase price or greater, then Buyer will provide Seller with the complete
36. appraisal and Seller will have one calendar day to decide if they will lower the purchase price to the appraised value. If Seller is not willing to
37. lower the purchase price to the appraised value, Buyer and Seller will have two calendar days to reach a mutually agreeable purchase price.
38. If a new purchase price cannot be agreed upon, the Purchase/Sale Contract shall be null and void and the earnest money shall be returned
39. to Buyer.
40. ☐ C. **ASSUMPTION** of Seller's loan or contract/Contract for Deed: See attached Financing Addendum (CRAAR Form 18a).
41. ☐ D. This contract is contingent upon and subject to closing the sale of:
42. (address) _____ which is:
43. ☐ **ACTIVE** and listed with a Real Estate Broker MLS# _____
44. ☐ **NOT** listed with a Real Estate Broker, will be listed and **ACTIVE** on or before (date) _____
45. ☐ **NOT** listed with a Real Estate Broker but is for sale
46. ☐ **UNDER CONTRACT** with all contingencies to be released by (date) _____ and expected to close no later than (date) _____
47. ☑ E. Other Financing terms and/or Concessions: _____
48. Buyer to provide proof of available funds within 24 hrs of an accepted offer.
49.
50. ☑ **INSURANCE:** Subject to buyer obtaining an acceptable insurance estimate/bid within 7 business days of accepted contract.
51. **JOINT TENANCY:** If Seller's title is held in joint tenancy with full rights of survivorship, this Contract shall not sever such joint tenancy.
52. Upon the death of one or more of the joint tenants, payments shall be made to the survivor.

Buyer's Initials  LWW 05/04/23 5:48 AM MST dotloop verified    Seller's Initials  CW 05/04/23 dotloop verified

Form 018 – Purchase/Sale Contract Page 1 of 4     ©Copyright Cedar Rapids Area Association of REALTORS 2023     Revised 12/31/2022

**Subject Property Address** _____1557 6th Ave SE_____, Cedar Rapids_____, Iowa

53. **BUYER HEREBY STATES HIS DESIRE TO TAKE TITLE IN THE FOLLOWING MANNER:**
54. ☐ Joint Tenants ☐ Tenants In Common ☑ As A Single Person ☐ Other _____.
55. **USE OF THESE PREMISES:** At option of the Buyer, this Contract is void unless, at time of settlement, Buyer is permitted under
56. existing zoning and any restrictive covenants to use these premises for rental property_____.
57. ☐ **THIS CONTRACT** is contingent upon and subject to the Seller providing the current restrictive covenants to the Buyer within three (3)
58. business days of acceptance of this Contract. Buyer will have three (3) additional business days from receipt to approve covenants.
59. ☐ **THIS CONTRACT** is contingent upon and subject to the attached Condominium/HOA Addendum.
60. **DUTIES OF THE PARTIES:** The **Broker**, his Agents, and employees make no representations or warranties as to the physical condition of the
61. property, its size, future value, or income potential. **Seller** and **Buyer** acknowledge that the **Seller** of real property has a legal duty to
62. disclose **Material Defects** of which the Seller has actual knowledge and which a reasonable inspection by the Buyer would not reveal.
63. **CONDITION OF PROPERTY:** Federal Law (known as Title X) requires notification of potentially dangerous levels of lead-based paint in
64. properties built before 1978 (See Lead-Based Paint Disclosure). If applicable, the Seller will provide the Buyer with copies of any
65. records or prior test results pertaining to lead-based paint findings. The property as of the date of this Contract, including buildings, grounds,
66. and all improvements, will be preserved by the Seller in its present condition until possession, per attached property disclosure, if applicable,
67. ordinary wear and tear excepted.
68. **PROPERTY INSPECTIONS:** These inspections are not to be construed as inspections to bring an older home into compliance
69. with current local building codes. These inspections are intended to discover any material adverse facts that impact the following
70. components of a property: structural, mechanical, safety, or health and it is understood that there is a reasonable expectation that
71. components are functioning properly unless disclosed otherwise. ____LWW____ _____ **(Buyer's initials)**.
72. "**Material Adverse Facts**" are defined in Iowa Code 543B.5(14) as meaning an adverse fact that a party indicates is of such significance or that
73. is generally recognized by a competent licensee as being of such significance to a reasonable party, that it affects or would affect the party's
74. decision to enter into a contract or agreement concerning a transaction, or affects or would affect the party's decision about the terms of the
75. contract or agreement. For purposes of this subsection, "adverse fact" means a condition or occurrence that is generally recognized by a
76. competent licensee as resulting in any of the following: **(1)** Significantly and adversely affecting the value of the property **(2)** Significantly
77. reducing the structural integrity of improvement to real estate **(3)** Presenting a significant health risk to occupants of the property.
78. This transaction is contingent upon the Buyer obtaining inspection reports, at Buyer's expense, unless noted otherwise, within the inspection
79. period indicated. **For all inspections, Seller agrees to have all utilities in service & mechanical equipment functional (if applicable),**
80. **and sewer line access location to be identified and accessible. It is understood that the Buyer and/or their representative has the right to attend**
81. **inspection appointments.**
82. **IF BUYER DOES NOT SECURE SAID INSPECTIONS AND PROVIDE WRITTEN NOTICE FOR REMEDIES WITHIN THE TIMELINE SPECIFIED**
83. **THEN BUYER SHALL BE DEEMED SATISFIED AND THE INSPECTION CONTINGENCY WILL BE CONSIDERED WAIVED.**
84. **RESPONSE TO INSPECTION FINDINGS:** If any inspection reveals material adverse facts, Buyer shall provide written notification of the defect along
85. with the relevant portion of the inspection report and the desired corrections and deliver them to the Seller within the "Inspection Period." Upon
86. delivery of the notice, Seller shall have three (3) business days to respond to the buyer's inspection requests. The Buyer and Seller shall have
87. three (3) additional business days ("Settlement Period") to negotiate a settlement of the condition of the real estate. If settlement is not reached
88. within the "Settlement Period," then this Purchase/Sale Contract shall be voidable. For purpose of this paragraph, material adverse facts do not
89. include minor or routine maintenance items.
90. **BUYER SELECTS THE FOLLOWING INSPECTIONS:**
91. ☑ 1. **A WHOLE PROPERTY INSPECTION** to determine the physical condition of the house, land, improvements, fixtures, equipment, any
92. additional structures, and any hazardous conditions on the real estate. Provided no later than _10_____ business days after the date
93. this Purchase/Sale Contract is accepted.
94. ☐ 2. **BUYER WAIVES A WHOLE PROPERTY INSPECTION** and chooses only:
95. ☐ Air Conditioning ☐ Electrical ☐ Plumbing ☐ Structural ☐ Other _____
96. ☐ Asbestos ☐ Heating ☐ Roofing ☐ Other _____ ☐ Other _____
97. Provided no later than _____ business days after the date this Purchase/Sale Contract is accepted.
98. ☑ 3. **A RADON TEST** will be ordered by Buyer. Test to be completed under closed house conditions by an Iowa state certified radon
99. measurement specialist. A test result less than 4 pCi/L is considered safe by the EPA.
100. Provided no later than _10_____ business days after the date this Purchase/Sale Contract is accepted.
101. ☑ 4. **A WOOD-DESTROYING INSECT INSPECTION** will be ordered by Buyer and completed by a state licensed commercial pesticide
102. applicator. If treatment is recommended due to an active infestation, the Buyer shall have the option of declaring this
103. Purchase/Sale Contract null and void if the Seller declines to have the property professionally treated as recommended. Provided
104. no later than _10_____. business days after the date this Purchase/Sale Contract is accepted.
105. ☑ 5. **A SEWER LINE INSPECTION** will be ordered by Buyer. Provided no later than _10_____ business days after the date
106. this Purchase/Sale Contract is accepted.
107. ☐ 6. **A WELL WATER QUALITY TEST** to meet local county health standards will be ordered by Buyer and provided no later than _____.
108. business days after the date this Purchase/Sale Contract is accepted.
109. ☐ 7. **A WELL AND ASSOCIATED EQUIPMENT INSPECTION** will be ordered by Buyer and provided no later than _____ business days
110. after the date this Purchase/Sale Contract is accepted.
111. ☐ 8. **A SEPTIC SYSTEM INSPECTION:** The septic system shall be inspected by a licensed DNR inspector as required by Iowa Code
112. 455B.172 and will be ordered and paid for upon completion by ☐ Seller ☐ Buyer. Said inspection results should be approved for
113. real estate transfer (unless exempt). Provided no later than _____ business days after the date this Purchase/Sale Contract is
114. accepted. Subject to Buyer having two (2) business days after receipt of inspection results and cover letter to approve results.
115. ☐ **IF BUYER WAIVES ALL PROPERTY INSPECTIONS, PLEASE SIGN HERE:**
116. Signatures: _____

Buyer's Initials: __LWW__ 05/04/23 5:48 AM MST dotloop verified    Seller's Initials: __CD__ 05/04/23 7:54 PM CDT dotloop verified

**Subject Property Address** _____1557 6th Ave SE_____, _Cedar Rapids_____, **Iowa**

117. **SPECIAL ASSESSMENTS:** Seller shall pay in full all Special Assessments whether levied or pending and all certified liens of record as
118. of the date of closing. Association fees, if any, shall also be paid current by the Seller to date of closing. Any preliminary or deficiency
119. assessments which cannot be discharged by payment at closing shall be paid through a written escrow account with sufficient funds to
120. pay such liens when payable, with any unused funds to be returned to the Seller without further signatures of the Buyer. All charges
121. for solid waste, trash removal, sewage, utility bills, and assessments for maintenance that are attributable to the Seller's ownership shall
122. be paid by the Seller.
123. **TAXES:** The Seller to be responsible for all real estate taxes that are liens on the property, including taxes that are due and payable for
124. the fiscal year in which the closing occurs. Buyer shall be given a credit for all subsequent taxes prorated to the date of closing.
125. Subsequent taxes shall be calculated using the latest known applicable assessed value, roll back, exemption, and levy of record
126. at time of closing.
127. ☐ There shall be no proration of subsequent real estate taxes.
128. **One (1) year home warranty insurance policy to be ordered and paid for by:** ☐ Seller ☐ Buyer ☐ No Warranty ☐ See additional provisions
129. **NEW CONSTRUCTION:** If the property is under construction or is to be constructed, this Contract shall be subject to having the
130. construction plans and appropriate specifications approved by the parties within _____ days of final acceptance of this Contract. New
131. construction shall have the warranties implied by law, specifically made by suppliers of materials/appliances, or specifically tendered by
132. the contractor. The Broker and its Agent make no warranties as to the quality of construction or quality of materials.
133. **CURRENT RENTAL PROPERTY:** This Contract ☐ is ☐ is not contingent upon Seller providing Buyer evidence of compliance with
134. local zoning and housing code ordinances, if applicable, unless otherwise provided with this Contract or stated in this Contract. The
135. following will be transferred to Buyer at closing: Security/Damage Deposits/Pet Deposits ☐Y ☐N  Prorated Rent ☐Y ☐N
136. **INSURANCE:** Seller shall bear the risk of loss or damage to the property prior to closing. Seller agrees to maintain existing hazard
137. insurance and Buyer may purchase additional insurance. In the event of substantial damage or destruction prior to closing, this Contract
138. shall be null and void, unless otherwise agreed to by the parties. The property shall be deemed substantially damaged or destroyed if it cannot
139. be restored to its previous condition on or before the closing date, provided, however, the Buyer has the right to complete the closing and
140. receive the insurance proceeds regardless of the extent of the damage.
141. **ABSTRACT AND TITLE:** Seller shall, immediately upon request, have the Abstract of Title extended to date and submit to an attorney
142. for a title opinion for the Buyer. Such attorney shall be selected by the Buyer or Buyer's lender. Such Abstract of Title shall show
143. merchantable title in the name of the Seller, subject only to encumbrances and liens herein assumed and such other encumbrances
144. and liens shall be paid from the proceeds of this sale. Seller agrees to make every reasonable effort to promptly perfect the title in
145. accordance with such title opinion so that, upon conveyance, title shall be deemed marketable in compliance with this Contract, the
146. land title laws of the State of Iowa, and the Iowa Title Standards of the Iowa Bar Association. If this sale is on the deferred installment
147. plan, such other encumbrances shall not exceed the unpaid balance of the stated purchase price and shall provide for an interest rate
148. and terms of payment no more onerous than those agreed to in this Contract. Thereafter the Seller shall not be obligated to make any
149. further extensions or corrections other than to show, upon full payment of the purchase price, entries subsequently caused by the Seller
150. and satisfaction of unassumed encumbrances shown by said examination or those thereafter imposed by the Seller. Upon full payment
151. of the purchase price, Seller shall deliver to Buyer a general warranty deed to this property accompanied by the Abstract of Title. If
152. closing is delayed due to Seller's inability to provide marketable title; this Contract shall continue in force and effect until either party
153. rescinds this Contract after giving seven (7) business days written notice to the other party and the Broker. The Seller shall not be
154. entitled to rescind this Contract unless he has made a reasonable effort to produce marketable title in the prescribed time.
155. **REMEDIES OF THE PARTIES:** If Seller fails to fulfill this Contract, he will pay the Listing Broker the commission in full. The Buyer shall
156. have the right to have all payments returned, and/or to proceed by any action at law or in equity and the Seller agrees to pay costs and
157. reasonable attorney fees, and a receiver may be appointed. Broker may maintain an action at law against Seller for the Broker's
158. commission. If the Buyer fails to fulfill this Contract, Seller may forfeit the same as provided in Chapter 656 of the Code of Iowa, and
159. all payments made so far shall be forfeited, or the Seller may proceed by an action at law or in equity. The Buyer agrees to pay costs
160. and reasonable attorney fees, including the Broker's commission. For purposes of collecting the Broker's commission, Broker shall be
161. deemed a third-party beneficiary to this Contract and maintain an action at law against the Buyer for the collection of these fees. If
162. Buyer or any other person or persons shall be in possession of this property or any part thereof, Buyer will peaceably remove himself
163. and his possessions and abandon all claims to any right, title, and interest in and to said property or in and to this Contract, or in default
164. thereof he may be treated as a tenant holding over unlawfully after the expiration of a lease and may be ousted and removed. Any
165. personal property remaining on the premises more than five (5) business days after the completion of such forfeiture proceeding shall be
166. conclusively presumed to have been abandoned by the Buyer and of no value to Buyer, and Seller may dispose of the same as
167. Seller wishes without liability and without any right of the Buyer to make claim for interest or damages.
168. **SUCCESSORS IN INTEREST:** When accepted, this Contract shall apply to and bind the heirs, executors, administrators, assigns, and
169. successors in interest of both parties. In case of the assignment of this Contract by either party, prompt written notice shall be given
170. to the other party. The liability of the Buyer under this Contract shall not cease or be terminated, even though the Contract be
171. assigned by the Buyer unless this liability is specifically released in writing by the Seller.
172. **COURT APPROVAL:** If the property is an asset of any estate, trust or conservatorship, this Contract is contingent upon Court approval
173. unless declared unnecessary by Buyer's attorney. If necessary, the appropriate fiduciary shall promptly obtain Court approval and
174. conveyance shall be made by a Court Officer's Deed.
175. **FUNDS:** It is agreed that at time of closing, funds, up to the purchase price, received from the Buyer and/or Buyer's lender may be
176. used to pay taxes, other liens, and expenses associated with this transaction, same to be handled under the supervision of the Listing
177. Broker so to produce marketable title. Seller hereby appoints the Listing Broker, escrow company, or lender to receive such funds and
178. make such payments and disbursements.

Buyer's Initials ____[LWW 05/04/23]____ ____  Seller's Initials ____[CD 05/04/23]____ ____

**Subject Property Address** _____ 1557 6th Ave SE _____, Cedar Rapids _____, Iowa

179. **GENERAL PROVISIONS:** In the performance of each part of this Contract, time shall be of the essence. This Contract shall be binding
180. on and inure to the benefit of the heirs, executors, administrators, assigns and is for the convenience of reference and shall not limit
181. nor affect the meaning of this Contract. All Buyer and Seller contingencies or sub-contingencies shall be released in writing by the date(s)
182. specified in this Purchase/Sale Contract, except as specified in the Inspection area, unless Buyer and Seller agree, in writing, to an extension.
183. If Buyer contingencies and sub-contingencies are not released in writing on or before the specified date(s), this contract may be voidable at the
184. Seller's option and/or Earnest Money may be forfeited to the Seller. If Seller contingencies and sub-contingencies are not released in writing on
185. or before the specified date(s), this contract may be voidable at the Buyer's option. If voided, Earnest Money will be returned to the Buyer.
186. **MEDIATION:** In the event of a dispute, Buyer and Seller agree to consider mediation as an alternative to initiating legal action.
187. The mediation will be conducted in accordance with the rules and procedures of a mutually agreed mediation service. Even when using
188. mediation, parties may still seek legal remedies.
189. **DISPOSITION OF PERSONAL PROPERTY:** Seller agrees to remove, prior to closing or possession, whichever is later, all personal
190. property **not** included in this sale, including trash, and miscellaneous items. Seller will be liable for any costs the Buyer incurs for the
191. removal of any of the Seller's personal property. Any such personal property remaining on the premises shall, unless the parties have
192. otherwise agreed, be conclusively presumed to have been abandoned by Seller and of no value to Seller. Seller will comply with
193. this expectation at his effort and at his expense.
194. **GENDER AND NUMBER:** Stated words and phrases shall be construed in the singular or plural number, and as masculine, feminine or
195. neutral gender as may be dictated by the context of this Contract.
196. **NOTICE:** Any notice required under this Contract shall be deemed given when it is received in writing either by hand delivery, fax, return
197. receipt requested mail, or electronic mail. Persons designated for receipt of any notice for the purpose of this Contract shall be the
198. Seller and Buyer or their respective agents.
199. **FINAL INSPECTION:** Buyer and/or their representative has the right to enter and inspect the premises, prior to closing, to determine if there
200. have been any material changes in the property since the origination date of this Contract. Seller to have all utilities on, unless the parties have
201. otherwise agreed. Buyer acknowledges by deposit of final funds that the property and all equipment is acceptable.
202. **Included: all permanent fixtures, all items per attached Seller's Property Disclosure dated on** 02/13/2023 ,
203. **and the attached Multiple Listing page with the MLS number of** 2300619 .

204. Offer is contingent upon seller having water turned on, and water heater plumbing completed in time to
205. not cause delay for the inspections.
206.
207.

208. **Please be aware that the Purchase/Contract supersedes the Seller's Property Disclosure document as well as the MLS Listing**
209. **documents.** This offer to purchase is made of my own free will and shall be good and binding upon the undersigned if accepted
210. **on or before (date)** 05/04/2023 , **by (time)** 4:00 ☐a.m. ☑p.m.
211. ☐ SEE ATTACHED ADDENDUM(S)

212. *Larry Wayne Wilhelmi*   dotloop verified 05/04/23 5:48 AM MST  PKE2-UNSI-IM5D-5ORX
213.    Buyer's Signature                                Date            Buyer's Signature                                Date
214.    Larry Wayne Wilhelmi
215.    Buyer's Legal Name (Printed)                                    Buyer's Legal Name (Printed)

216. ☐ **SELLER'S ACCEPTANCE.** The undersigned Seller of the above property accepts the above offer and agrees to sell this property
217.    according to the terms offered on this date of: (date) _____ (time) _____ ☐a.m. ☐p.m.
218. ☐ **SELLER'S REJECTION.** The undersigned Seller of the above property rejects this Buyer's written offer to purchase the above
219.    stated property. (date) _____ (time) _____ ☐a.m. ☐p.m.
220. ☑ **SELLER'S COUNTER-OFFER.** The undersigned Seller of the above property accepts the above offer, however, counters certain
221.    terms and conditions as per attached Counter-Offer. (date) _____ (time) _____ ☐a.m. ☐p.m.

222. *Charles Davisson*   dotloop verified 05/04/23 7:54 PM CDT  EGOE-W6W3-RGDG-PJHZ
223.    Seller's Signature                                Date            Seller's Signature                                Date
224.    Charles Davisson, President of Property Holders LTD
225.    Seller's Legal Name (Printed)                                    Seller's Legal Name (Printed)

**FOR BROKER REFERENCE ONLY**

226.  **Coldwell Banker Hedges Realty**                Team Moser
    Name of Selling Company (Printed)                Name of Selling Agent (Printed)

227.  **Keller Williams Midwest Partners**             Cory Rath
    Name of Listing Company (Printed)                Name of Listing Agent (Printed)

dotloop signature verification: dtlp.us/XvyR-2lpm-W32S




# COUNTER-OFFER NUMBER (#): 1 - ONE

**AN ADDENDUM** to the Purchase/Sale Contract dated: 05/04/2023
In response to the offer to purchase the real property commonly known as:
**1557 6th Ave SE, Cedar Rapids, IA 52403**

The following Counter-Offer is hereby submitted by: ☐**Buyer**   ☑**Seller**
**Thank you for your offer! Sellers accept your offer, but respectfully counter the following:**
**1.) Price to be $109,900**
**2.) Closing date to be May 26, 2023**

**Deadline for seller's response to Purchase/Sale Contract to be extended to May 4, 2023, by 11:59 PM**

**OTHER TERMS:** All other terms and conditions of the initial offer and any Counter-Offers to buy shall remain the same.
**EXPIRATION:** This Counter-Offer shall expire by (date) 05/05/2023 , (time) 12:00    ☐a.m. ☑p.m.

*Charles Davisson*                                             dotloop verified
                                                               05/04/23 7:54 PM CDT
                                                               ZKFJ-ZW34-RM9E-HUPT

☑Seller  ☐Buyer                              Date        ☐Seller  ☐Buyer                              Date

☑ **ACCEPTANCE OF COUNTER-OFFER**
    The undersigned accept(s) the above Counter-Offer on (date) 05/04/2023 , (time) 10:10    ☐a.m. ☑p.m.

☐ **COUNTER-OFFER NOT ACCEPTED**
    The undersigned reject(s) the above Counter-Offer (date)_____, (time)_____ ☐a.m. ☐p.m.

☐ **ADDITIONAL COUNTER-OFFER**
    The undersigned accept(s) the above Counter-Offer with EXCEPTIONS noted in the attached Counter-Offer #_____
    (date)_____ (time)_____ ☐a.m. ☐p.m.

                                                               *Larry Wayne Wilhelmi*   dotloop verified
                                                                                        05/04/23 8:07 PM MST
                                                                                        RDDI-AR0H-CRN9-HF0T

☐Seller  ☑Buyer                              Date        ☐Seller  ☑Buyer                              Date

Form 019 – Counter-Offer      ©Copyright Cedar Rapids Area Association of REALTORS 2023      Revised 12/31/2020

EXHIBIT B

**Advantage Escrow Services**
*2503 Bever Avenue SE*
*Cedar Rapids, IA 52403*
**PRELIMINARY ONLY**

**Seller:** Property Holders LTD

**Buyer:** Larry Wayne Wilhemi

**Property Address:** 1557 6th Ave SE, Cedar Rapids

**Closing Date:** 5/26/2023

| | | |
|---|---|---:|
| **Sale Price** | | $109,900.00 |
| **Earnest Money\*\*** | $1,000 | |
| **Closing cost credit** | | $0.00 |
| **Tax proration 7/1/2022 to** | 5/26/2023 | $1,207.43 |
| **Special Assessment to** | | $0.00 |
| **1st Mortgage payoff to** | Greenstate Credit CU | $0.00 |
| **2nd Mortgage payoff to** | | $0.00 |
| **Overnight/Wire Fee** | | $0.00 |
| **Revenue Stamps to** | Linn County Recorder | $175.20 |
| **Abstracting to** | Iowa Title | $450.00 |
| **Document Preparation to** | Tim Estlund | $40.00 |
| **Commission to** | Keller Williams Midwest Partners | $3,846.50 |
| **Commission to** | Coldwell Banker Hedges | $3,846.50 |
| **Transaction fee to** | Advantage Escrow Services | $295.00 |
| **September 2022 taxes to** | Linn County Treasurer | $0.00 |
| **March 2023 taxes to** | Linn County Treasurer | $0.00 |
| | Due to Seller: | $100,039.37 |

\*\*Please deduct the earnest money from Keller Williams commission

_____     _____
Seller                                                                   Seller