## United States Bankruptcy Court
## Northern District of Iowa

**IN RE:**

PROPERTY HOLDERS, LTD,

          **Debtor.**

**Chapter 11**

**Bankruptcy No.** 22-00744

**Objection to United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. §1112**

---

Debtor, by Rush M. Shortley, its attorney, states its response to the motion and requests relief as follows:

**JURISDICTION**

1. The jurisdictional statements in Paragraphs 1–3 are accurate and admitted.

**FACTS**

2. The factual statements made by the movant in Paragraphs 4–11 are essentially correct as of the filing of the motion at issue.

3. In response to Paragraph 8, all administrative expenses owed to the trustee and Debtor's counsel pursuant to orders of this court have been paid in full.

4. In response to Paragraph 10, Debtor requested authority to use cash collateral of GreenState Credit Union (GSCU) in a motion filed February 14, 2023 (DOC 67), which included a request to use cash collateral for payment of "professional fees as approved by the Court". On March 3, 2023, the court entered its order approving Debtor's requests for use of cash collateral for all purposes "proposed in its motion seeking authority to use cash collateral resulting from the sale of parcels of real estate mortgaged to Greenstate Credit Union." (DOC 89)

5. In response to Paragraph 11, Debtor has in fact filed tax returns for 2022, 2023 and 2024, which were filed as supporting documents for the monthly report for March 2026 filed on April 30, 2026 at DOC 316. An extension has been filed by Debtor for the 2025 tax year. Due to loss carry-overs from preceding years, Debtor had no tax liability for the 2022–2024 tax years.

6. Debtor's counsel has received two payments of $500.00 since the trustee's compensation was paid as stated, which have been deposited in debtor's client funds account maintained in counsel's IOLTA attorney's trust account pursuant to the court's order.

**ARGUMENT**

7. The United States Trustee (UST) has failed to establish cause for dismissal of this case as set out in the following paragraphs.

8. In Paragraph 12 of the UST's motion claims cause for dismissal exists based on Debtor's "inability to effectuate substantial consummation of a confirmed plan."

   a. To date, Debtor has sold seven (7) properties mortgaged to GSCU and paid a total of $558,768.40 on that secured claim (See Exhibit A), leaving approximately $281,386.00, plus accumulating interest, to pay on all remaining mortgage debt pursuant to the foreclosure decrees previously entered by GSCU. Also, GSCU has claimed $21,113.76 in legal fees and other costs expended in protecting its interests in this case (See Claim 8-Amended), for an estimated total due of $302,499.76. Two additional properties mortgage to GSCU have been listed for sale (See Exhibit B) with the realtors estimated net proceeds of $297,973.00. (See Exhibit C) Debtor plans to pay the difference in collected rents in the approximate amount of $4,500–$5,500 to pay GSCU's claim in full.

   b. To date, Debtor has sold six (6) properties mortgaged to Dupaco Community Credit Union (Dupaco) and paid a total of $721,614.46 on that secured claim (See, Exhibit D), leaving approximately $1,450,373.00, plus accumulated interest, plus $31,136.14 in attorney fee, appraisal costs and other costs expended in protecting its interests in this case. (See Claim 5-Amended), for an estimated total due of $1,481,509.14, leaving an estimated $531,509.14 to pay before reaching the plan goal of $950,000.00 net remaining due on Dupaco's secured claim. Debtor is currently preparing two properties mortgaged to Dupaco for sale to be listed in June and August of 2026 for total anticipated listing prices of $520,000. (See, Exhibit B) Any remaining deficit would be paid from collected rents.

   c. If necessary, Debtor will sell an additional property to fill out any amounts remaining to be paid. The debtor owns two empty lots worth approximately $50,000 to $60,000 each for a total value of $100,000 to $120,000, and the debtor's president believes that one or both of these lots could be sold fairly quickly to make up any remaining requirements for carrying out the debtor's plan.

9. Debtor's plan was confirmed on June 7, 2023. The sales described above have been completed within the original 3-year period in spite of a substantial negative change in the real estate market conditions affecting the sale of Debtor's properties. The increases of residential real estate mortgage interest rates over the last three years have increased

the difficulty of sales of residential real estate, in addition to the inflation of consumer prices over the period of the plan. The total sale prices of the properties sold have exceeded the total appraised value of those properties. (See Exhibit E - Debtor's Statement Regarding Market Conditions, Asset Maximization, and Plan Feasibility to Address Motion for Dismissal of Case) Given the change in market conditions, Debtor believes it has done well in working to carry out the terms of its confirmed plan.

10. There is no more reason today to dismiss this case to allow the two secured creditors to liquidate Debtor's remaining properties outside bankruptcy. Both secured lenders remain more than adequately protected by substantial equity cushions in the unsold properties subject to their respective mortgage liens. The loan to value relationship of Dupaco's remaining claim is approximately 36.5%, leaving an equity cushion of 64% in the mortgaged properties. Based on its appraisals, GSCU currently enjoys a loan to value relationship of approximately 43%, leaving a 57% equity cushion. Should Dupaco be reluctant to return its claim to normal loan servicing when the principal balance due has been reduced to $950,000 as contemplated by Debtor's plan, the loan to value relationship of the remaining parcels should be sufficient to obtain refinancing—On information and belief, Debtor believes that Dupaco itself is making new commercial real estate loans with a loan to value relationship of 80%, and Debtor is in a position to offer a substantially better loan to value relationship to either Dupaco or a refinancing lender.

11. Given the changes in market condition over the last three years and the substantial sales of properties and substantial reduction of debt owed to the secured claimholders, substantial cause exists for the Debtor to obtain modification of its plan to extend it for two years pursuant to 11 U.S.C. § 1193 to complete the tasks necessary to complete the plans goals.

12. Given the current values of Debtor's properties, the loan to value relationships of the secured claim holders and Debtor's substantial performance under its plan, there is no more reason today to dismiss this case than there was three years ago to deny confirmation of Debtor's plan. Today, as then, there is substantial likelihood that liquidation of Debtor's properties by judicial foreclosure under Iowa state law would substantially diminish the remaining value in any property retained by Debtor, a risk that is clearly more substantial than the secured claimholders realizing a loss from a continuation of Debtor's plan for an extended period.

WHEREFORE, Property Holders, LTD requests that this Honorable Court enter its order denying  the United States Trustee's motion to dismiss this case and granting such other relief to Debtor as it finds agreeable to Equity and good conscience.


Dated: May 6, 2026

Respectfully Submitted,

Rush M. Shortley                                   7353
1921 51st Street NE
Cedar Rapids, IA 52402
Phone: (319) 294-1907
E-mail: rush@shortleylaw.com
Attorney for Debtor

**GSCU properties sold since commencement of the Chapter 11 plan**

| Property location | GSCU Appraised value | Sale price | Loan amount paid | Net proceeds |
|---|---|---|---|---|
| | | | | |
| 2208 Mt Vernon Rd SE | No Appraisal | $139,900 | $84,997.84 | $32,844.67 |
| 825 18th St SE | $83,000 | $128,000 | $58,316.79 | $15,062.80 |
| 1158 28th St SE | No Appraisal | $135,000 | $117.695.80 | $0 (all to creditor) |
| 1751 Higley Ave SE | No Appraisal | $109,900 | $98,491.14 | $0 (all to creditor) |
| 1841 Washington Ave | $73,000 | $138,900 | $120,580.00 | $0 (all to creditor) |
| 1548 7th Ave SE | No Appraisal | $125,000 | $64,149.91 | $47,640.32 |
| 1557 6th Ave SE | $116,000 | $109,900 | $72,270.54 | $35,702.59 |
| TOTAL | | | $558,768.40 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# EXHIBIT A

**Properties to be sold to satisfy the plan**

| Property location | Lender | Anticipated list date | List price |
|---|---|---|---|
| | | | |
| 1713 7th Ave SE | GSCU | Currently listed | $215,000 |
| 1933 Higley Ave SE | GSCU | May 2026 | $120,000 |
| 130 Thompson Dr SE | DUPACO | August 2026 | $290,000 |
| 2021 Grande Ave SE | DUPACO | June 2026 | $230,000 |
| | | | |
| | | | |

**EXHIBIT B**

**COLDWELL BANKER**
**HEDGES REALTY**

## Estimated Sales Expense
### 1933 Higley Ave SE

| | | |
|---|---|---|
| Sale Price | | $ 120000 |
| Listing Agent Compensation 3.5 % | $4200 | |
| Buying Agent Compensation 3.5 % | $4200 | |
| Extended Abstract | $450 | |
| Current Taxes Due | $1074 | |
| Tax Proration from 7/1/25 TO 6/15/26 | $2148 | |
| Mortgage Balance as of _____ | $_____ | |
| Mortgage Interest due | $_____ | |
| THROUGH _____ | | |
| Termite Inspection | $_____ | |
| Well & Septic | $_____ | |
| Revenue Stamps | $192 | |
| Closing Document Preparation | $350 | |
| Miscellaneous | $_____ | |
| AHS Home Warranty | $_____ | |
| Home Inspection | $_____ | |
| Other | $_____ | |
| Other | $_____ | |
| | | |
| Total Expenses | | $ 12614 |
| **Approximate Net Proceeds** | | $ 107386 |

| | |
|---|---|
| Seller | Date |
| Seller | Date |

**EXHIBIT C**

**COLDWELL BANKER**
**HEDGES REALTY**

**Estimated Sales Expense**
**1713 7th Ave SE**

Sale Price ........................................................... $ 210,000

Listing Agent Compensation _3.5_ % ... $ 7350

Buying Agent Compensation _3_ % ... $ 4300

Extended Abstract ... $ 450

Current Taxes Due ... $ 1309    September (Possibly)

Tax Proration from 7/1/_26_ TO _6/12/26_ $ 2618

Mortgage Balance as of _____ $ _____

Mortgage Interest due ... $ _____

THROUGH _____

Termite Inspection ... $ _____

Well & Septic ... $ _____

Revenue Stamps ... $ 336

Closing Document Preparation ... $ 350

Miscellaneous ... $ _____

AHS Home Warranty ... $ _____

Home Inspection ... $ _____

Other ... $ 700

Other ... $ _____

Total Expenses ... $ 19,413

**Approximate Net Proceeds** ... $ 190,587

_____
Seller                                                 Date

_____
Seller                                                 Date

**Exhibit C**

Estimated Sales Expense.doc
08/05/2024

**DUPACO properties sold since commencement of the Chapter 11 plan, May 2026**

| Property location | Appraised value | Sale price | Loan amount paid | Net proceeds |
|---|---|---|---|---|
| | | | | |
| 1060 33rd St NE | $115,000 | $187,000 | $86,188.66 | $75,762.44 |
| 2009 Memorial Dr SE | $275,000 | $317,000 | $283,672.98 | $0 (all toward creditor) |
| 1748 C Ave NE | $115,000 | $168,500 | $110,541.08 | $0 (all toward creditor) |
| 357 17th St SE | $130,000 | $135,000 | $35,593.15 | $82,074.75 |
| 2916 Iowa Ave SE | $97,000 | $154,000 | $65,865.28 | $55,967.72 |
| 1047 27th St NE | $151,000 | $180,000 | $139,753.31 | $0 (all toward creditor) |
| TOTAL | | | $721,614.46 | |
| | | | | |
| | | | | |
| **1720 Grande Ave SE | | | Mortgage retired bc cross- collateralized with 1748 C Ave SE | |

# EXHIBIT D

# Debtor's Statement Regarding Market Conditions, Asset Maximization, and Plan Feasibility to Address Motion for Dismissal of Case.

## Real Estate Market Conditions

At the time of filing, the real estate market in Linn County was at historically high levels. Since that time, market conditions have shifted significantly, with a marked slowdown in activity. During this period, interest rates increased from historically low levels to the highest levels seen in approximately 40 years. This change materially impacted the ability of first-time homebuyers—who comprise the primary market for the Debtor's properties—to obtain financing.

As a result, even qualified buyers became increasingly hesitant, leading to multiple failed transactions. Since filing, the Debtor has entered into approximately 29 purchase agreements that were subsequently terminated by buyers, in some instances shortly before scheduled closings.

Notwithstanding these challenges, the Debtor has successfully sold properties at or above appraised value in all but one instance, which sold for $500 below appraised value (1751 Higley Ave SE).

---

## Asset Maximization and Impact of COVID-19

The Chapter 11 reorganization process is intended to allow the Debtor to maximize the value of its assets for the benefit of creditors. The Debtor's results to date demonstrate that this objective has been achieved, as properties have consistently sold at or above appraised value.

This approach has generated sufficient proceeds to satisfy creditor claims in full, with assets remaining.

The Debtor's financial position was materially impacted by external factors, including federal and local eviction moratoria during the COVID-19 period, which resulted in prolonged vacancies and significant property deterioration. The Debtor did not receive COVID-related financial assistance.

Through the Chapter 11 process, the Debtor has restored properties to pre-COVID condition and, in most cases, realized values exceeding prior appraisals. The capital invested in these renovations has produced a strong return, as evidenced by sale prices that consistently met or exceeded appraised values. Accordingly, such expenditures were reasonable and necessary to maximize asset value.

# EXHIBIT E

Although this process extended the timeline due to the scope of rehabilitation and broader market conditions, the resulting increase in value has justified the additional time and investment and has directly benefited creditors.

## Personal Circumstances Affecting Timeline

The Debtor has encountered two significant personal circumstances over the past year that have affected the pace of completing the Chapter 11 plan. As the Debtor performs a substantial portion of the work required to prepare properties for sale, these circumstances have directly impacted progress.

First, approximately one year ago, the Debtor's 87-year-old mother was diagnosed with sudden-onset dementia. The Debtor serves as her primary caregiver and has been required to devote substantial time to her care.

Second, earlier this year, the Debtor underwent emergency surgery on his dominant right hand, resulting in a significant limitation in its use. The Debtor has been unable to perform lifting or other manual tasks for an anticipated period of approximately six months.

## Feasibility of Plan

The U.S. Trustee has raised concerns regarding the Debtor's ability to complete the plan, including reference to a previously asserted potential shortfall in property value. That assessment is not accurate.

Two properties (1713 7th Ave and 1933 Higley Ave SE), anticipated to close in May/June 2026, are expected to generate proceeds sufficient to satisfy in full the outstanding obligation to GSCU, currently approximately $281,386.00.

Following these transactions, the Debtor will retain additional properties associated with GSCU with an estimated aggregate market value of approximately $750,000 to $1,000,000. There is no projected deficit.

With respect to DUPACO, the reported outstanding balance is approximately $1,450,373. The confirmed plan contemplated reducing this to approximately $950,000 through refinancing. The Debtor holds 19 properties financed or previously financed by DUPACO, with an estimated aggregate market value of approximately $4,000,000, resulting in a current loan-to-value ratio of approximately 36.25%. This ratio is well within current lending thresholds, which commonly extend to approximately 80% loan-to-value.

## Refinancing Plan and Forward Outlook

Following full payment to GSCU and release of the associated judgment, the Debtor has begun exploring refinancing options for the remaining portfolio.

Given the portfolio's estimated value of approximately $4,000,000 and favorable loan-to-value ratio, the properties are expected to be attractive to multiple lenders, and preliminary discussions have already commenced.

Completion of refinancing will require time, including appraisals, underwriting, and negotiation of loan terms. However, the Debtor anticipates that refinancing will be achievable and will facilitate completion of the plan.

It should also be noted that, once GSCU is paid off with the sale of the last two remaining properties, looking forward, the Debtor will be able to once again devote financial and labor resources to his full-time business model of leasing large single-family homes. Rising interest rates and broader economic uncertainty have reduced affordability for prospective buyers, thereby increasing demand for such rental housing (see Rentals and Rental Income table).

## Conclusion

Despite significant market changes, external challenges, and personal circumstances affecting timing, the Debtor has consistently maximized asset value, generated proceeds sufficient to satisfy creditor claims, and maintained a clear and achievable path to full plan consummation.